Joyce E. WILLIAMS, on Behalf of
Loretta L. WILLIAMS,
Plaintiff–Appellant,

v.

Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant–Appellee.

No. 51, Docket 88–6104.

United States Court of Appeals,
Second Circuit.

Argued Aug. 31, 1988.

Decided Oct. 13, 1988.

Dennis A. Clary, Niagara County Legal Aid Soc., Inc., Niagara Falls, N.Y., for plaintiff-appellant.

Kathleen A. Mahoney, Buffalo, N.Y. (Roger P. Williams, U.S. Atty., W.D.N.Y., Ronald E. Robertson, Gen. Counsel, Annette H. Blum, Chief Counsel, Region II, Geraldene Sherr, Asst. Regional Counsel, Region II, Buffalo, N.Y., of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, and CARDAMONE and PRATT, Circuit Judges.

CARDAMONE, Circuit Judge:

██ This appeal from a denial of disability benefits is somewhat uncommon because it requires us to reverse an administrative determination for lack of substantial evidence. Such a determination must demonstrate a rational connection between the agency's legal conclusion and the medical and lay testimony presented. Only then can a reviewing court be assured that the evidence on which the administration determination rests is "substantial." The constituents of this required foundation are wanting in this appeal brought by Joyce E. Williams on behalf of her daughter Loretta Lynn Williams (claimant) from a judgment of the United States District Court for the Western District of New York (Elfvin, J.), which upheld the determination of the Secretary of Health and Human Services (Secretary) denying claimant's application for supplemental disability benefits under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381–1385 (1982 & Supp. III 1985).

In a memorandum and order dated February 25, 1988, the district court ruled that substantial evidence supported the Secretary's determination that the claimant had not proven her entitlement to disability benefits. Because the Secretary's determination runs sharply against virtually all the medical evidence presented and makes no specific finding as to the credibility of the claimant's otherwise uncontroverted testimony, we cannot adopt that view. We hold instead that the administrative decision to deny disability benefits is not supported by substantial evidence.

## I BACKGROUND

On behalf of her then ten-year-old daughter Loretta, Joyce E. Williams filed an application for Supplemental Security Income Benefits on November 5, 1984. Born on December 28, 1973, Loretta was diagnosed at birth as having bilateral congenital hip disease. Dr. Denzel initially treated Loretta by requiring her to wear a soft "Freyka" pillow that maintained flexion and abduction in her thighs. In February of 1974 Drs. Denzel and Fricke conducted a nonsurgical procedure to realign bone fragments in Loretta's hip. Four months later, when Loretta was seven months old, her left hip again dislocated and the same doctors performed a surgical procedure to regain and stabilize the alignment of her hip bones.

In 1975 the hip once again dislocated, and Loretta had surgery at the Hospital for Sick Children in Toronto where her hip bones were realigned and the sockets into which the femurs fit were reoriented to prevent further dislocation. At this time,

her physicians believed her left hip was properly located and her right hip unimpaired, though she wore a series of specialized casts for eight months to stabilize her hips and to permit bone growth. Despite some signs of improvement, Dr. Salter at the Hospital for Sick Children was forced to realign Loretta's hips surgically and to suture a torn joint capsule in her hip socket. This operation was deemed a success, and the patient was instructed to begin engaging in more ordinary activities.

Nonetheless, in August of 1982 when Dr. Denzel examined the now eight-year-old claimant he found that she had a congenital persistent dislocation of her left hip, "a short leg gait" and a "significant Trendelenburg;" that is, the walk of a person whose gluteus medius muscle is paralyzed, characterized by an unbalanced gait throwing weight directly over one femur. The medical significance of a Trendelenburg is that it makes abduction of the thigh more difficult. Dr. Denzel further noted that Loretta's left leg was two inches shorter than her right, she was wearing a one-half inch corrective shoe insert, and her left thigh muscles were significantly atrophied relative to those of her right thigh. These findings were confirmed later in 1982 at the Shriners Hospital for Crippled Children in Erie, Pennsylvania.

When Dr. Nadler examined Loretta in May, 1983 he noted her Trendelenburg and that she walked with a "marked limp." Dr. Nadler expressed "doubt that she could ever be able to do any occupation which would require prolonged standing or walking or use of her left lower extremity." He further noted the atrophy of her left thigh. Also in May, 1983 Dr. Banwar of Shriners Hospital examined Loretta for leg length discrepancy and confirmed that she had a "marked Trendelenburg and a ... discrepancy of 3 centimeters." Tests indicated that her leg length discrepancy was only 0.4 centimeters and that the relative shortness of the left leg was caused by "a significant higher riding left hip." On October 9, 1984 Loretta was successfully operated on to arrest bone growth in her right leg.

At the request of the Secretary, Loretta was examined by Dr. Rupsis on March 8, 1985. He reported that claimant had occasional pain in her hip and experienced some difficulty riding a bicycle, that she walked with a "marked short leg gait," demonstrated a "significant drooping of the pelvis," and that she was overweight. The Secretary's physician also noted that despite some limitation of flexion and abduction, claimant showed "surprisingly good" mobility and motion in her left hip, "considering the amount of previous surgery."

## II PROCEEDINGS BELOW

Claimant's initial application for Supplemental Security Income Benefits and subsequent request for reconsideration were both denied. On July 29, 1985 an administrative hearing was held before an Administrative Law Judge (ALJ). Loretta and her mother both testified. Joyce Williams testified that her daughter walked with a limp and that her leg sometimes "gives out" causing her to fall. The mother stated that when she walked at her normal pace, Loretta could not keep up.

Loretta testified that she was 5'4" tall and weighed about 200 pounds. She takes a special bus for the handicapped to school, but does not use a cane or a walker. She indicated that she can do most ordinary household tasks such as cleaning her room, picking up clothes, sweeping the floor, setting and clearing the table, and making beds. She told the ALJ that she could not ride a bicycle or jump rope, but that she did use a stationary bicycle built for her by her father. She further testified that she helped her brother bundle advertisements for neighborhood delivery, but that she was unable to walk fast enough to help deliver them. She said she was a "Girl Scout" in a "Brownie" group, and that she had gone "hiking" in a campground. She tires easily, her testimony continued, and she experiences some pain in her back and legs when bending over. Finally, Loretta confirmed that she occasionally falls down and has trouble avoiding obstacles in her path.

After reviewing the applicable statutory requirements, the ALJ detailed the recited

evidence. Despite Loretta's serious medical history and the uncontradicted testimony of claimant and her mother, the ALJ concluded that her condition did not constitute a "disability" within the meaning of the relevant regulations. More specifically, he determined that Loretta's condition had not caused a "marked reduction" in her walking speed or distance and that her impairment did not, therefore, rise to a level of severity sufficient to make her "disabled" within the regulatory scheme. Claimant's request for review was denied by the Appeals Council.

Mrs. Williams then instituted the instant litigation in the Western District of New York seeking judicial review of the Secretary's denial of benefits. Pursuant to 28 U.S.C. § 636(b)(1)(B), the district court referred the case to a magistrate for a report and recommendation. The magistrate recommended that the decision of the ALJ be reversed and that the case be remanded to the Secretary for a calculation of benefits. Concluding that the ALJ's decision was not supported by substantial evidence, the magistrate found that "there is substantial evidence of record which supports a finding that plaintiff's ability to walk is reduced in both speed and distance." In particular, the magistrate noted the repeated medical evidence of Loretta's "marked limp," her "marked short leg gait," and objective evidence that her left thigh was "smaller in diameter and weaker in strength" than her right. Moreover, the magistrate observed that an ALJ normally must make findings regarding the credibility of uncontradicted witnesses, whose testimony the ALJ subsequently rejects. No such findings were made by the ALJ.

The district court did not adopt the recommendation of the magistrate. Instead, it affirmed the Secretary's administrative determination, stating that the decision was "not unsupported by substantial evidence." This appeal followed.

## III DISCUSSION

### A. *Scope of Review*

We set forth an appellate court's power of review in this sort of case. A determination by the Secretary that a person is not disabled is conclusive when that decision is supported by substantial evidence. 42 U.S.C. § 405(g) (1982); *see Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986); *Bluvband v. Heckler,* 730 F.2d 886, 891 (2d Cir.1984). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is more than a mere scintilla or a touch of proof here and there in the record.

Within that limitation on its scope, appellate review of an administrative record is plenary, and not merely a rubber-stamping of the administrative conclusion. *See Valente v. Secretary of Health and Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984). To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983). The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having "rational probative force." *Consolidated Edison Co.,* 305 U.S. at 230, 59 S.Ct. at 217.

### B. *Statutory Requirements*

We begin by reviewing the statute under which the instant claim is made. To prove entitlement to disability benefits under Title XVI of the Social Security Act, an adult claimant must establish that she suffers

from a medically determinable physical impairment that prevents her from engaging in any substantial gainful activity. *See* 42 U.S.C. § 1382c(a)(3)(A) (1982). In the case of a child under the age of 18, a disability will be recognized, and benefits awarded, if the child suffers from an impairment of "comparable severity." *See id.; see also* 20 C.F.R. § 416.906 (1988). Pursuant to his authority under the Social Security Act, § 1382c(a)(3)(D), the Secretary has promulgated regulations setting forth specific criteria for determining child disabilities. According to those regulations a child will be found disabled if he or she

(a) Is not doing any substantial gainful activity; and

(b) Has a medically determinable physical or mental impairment(s) which compares in severity to any impairment(s) which would make an adult (a person age 18 or over) disabled. This requirement will be met when the impairment(s)—

(1) Meets the duration requirement; and

(2) Is listed in Appendix 1 of Subpart P of Part 404 of this chapter; or

(3) Is determined by us to be medically equal to an impairment listed in Appendix 1 of Subpart P of Part 404 of this chapter.

20 C.F.R. § 416.924 (1988); *see also* § 1382c(a)(3)(A) (durational requirement is a continuous period of impairment of not less than 12 months).

The Appendix referred to in the regulation above contains a listing of impairments for adults and for children. Part B of Appendix 1 concerns impairment or disability criteria exclusively applicable to children. In the instant case claimant asserts that, as a result of lifelong musculoskeletal abnormalities, she suffers a marked reduction in walking speed and distance under Listing § 101.03(A) and is, therefore, entitled to disability benefits. Section 101.03 states "Deficit of musculoskeletal function due to ... musculoskeletal disease and one of the following: A. Walking is markedly reduced in speed or distance despite orthotic or prosthetic devices." She poses, in short, a single issue: whether there is sub-

stantial evidence to support the administrative determination that her musculoskeletal disease has not resulted in a marked reduction in walking speed or distance.

 The Secretary correctly argues that it is not sufficient that there be a diagnosis of a listed impairment. Were only a diagnosis sufficient, Loretta would be entitled to benefits because there is no dispute that she suffers from a deficit of musculoskeletal function due to her congenital left hip impairment. Rather, the evidence must also establish that the medical findings demonstrate the existence of the specific impairment listed in Appendix 1. *See* 20 C.F.R. §§ 416.926(b), 416.927. Moreover, in evaluating a claim of disability, the Secretary must consider objective and subjective factors, including: (1) objective medical facts; (2) diagnosis or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience. *See Bluvband,* 730 F.2d at 891; *see also* 20 C.F.R. § 416.927. Accordingly, we review the entire record presented to the Secretary, particularly as it bears upon the requirement that a claimant demonstrate a marked reduction in walking speed or distance.

## C. *Medical Evidence*

 The administrative record is replete with medical reports describing claimant's condition and her gait as significantly or markedly abnormal. Objective medical evidence and clinical diagnoses demonstrate that claimant's left leg is significantly atrophied and weakened in relation to her right leg. A structural imbalance between her hips makes one leg appear shorter than the other and requires that she wear a seven-eighths inch corrective lift in her left shoe. She has been operated on numerous times —to arrest bone growth in her right leg, to realign her hips, to stimulate bone growth and fusion, and to ensure proper skeletal orientation of her left hip socket and femur. Despite the apparent success of each operation, claimant's treating physicians and the Secretary's consulting physician

uniformly describe her manner of walking as abnormal. Because of the medical consensus regarding claimant's condition, this Circuit's "treating physician rule" does not come into play in the case at hand. *See Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986). Here the opinions given by the various medical experts are in substantial, if not uniform, agreement.

For example, after having endured at least three corrective surgical procedures, Dr. Denzel reported that Loretta had a "short leg gait," "a significant Trendelenburg," and noticeable atrophy of the left thigh. Dr. Nadler later indicated that she walked with a "marked limp," and opined that Loretta would not be able to perform a job that required prolonged standing or walking. Dr. Banwar of Shriners Hospital similarly noted the imbalance between Loretta's hip bones and her Trendelenburg gait. Finally, the Secretary's consulting physician, Dr. Rupsis, reported that Loretta walked with a "marked short leg gait."

At oral argument, the Secretary's counsel correctly pointed out that the applicable criterion—a marked reduction in walking speed or distance—requires a "functional assessment" of walking. By "functional" we assume the Secretary means that claimant's walking ability must prevent her from undertaking any "substantial gainful activity." *See* § 1382c(a)(3)(A) ("An individual shall be considered to be disabled ... if he is unable to engage in any substantial gainful activity...."); 20 C.F.R. § 416.905 (same). At least one circuit has considered the "gainful activity" approach as it applies to children, and noted that because "children seldom work even if they have no impairment, it would be inappropriate to consider whether a child is able to engage in 'substantial gainful activity.'" *Hinckley v. Secretary of Health and Human Servs.*, 742 F.2d 19, 22 (1st Cir.1984). In fact, the requirement of § 1382c(a)(3)(A) that children meet a "comparable severity" standard suggests, quite to the contrary, that adults and children cannot be judged by identical standards. *Id.* at 22–23 (noting that "Congress did not intend the Secretary to apply a nonmedical 'vocational factors' test to children who do not work").

Even were we to adopt the Secretary's "functional assessment" tack, it would not alter the result. Unrefuted evidence in the record indicates that Loretta could not perform tasks that involve walking, standing, or bending. The word "gait"—employed by each examining physician—means or describes a manner of walking or locomotion by foot. Each physician has, in turn, noted the abnormality *and* shortness of Loretta's gait. Objective medical evidence and the professional opinions—taken together with common sense—logically connect therefore the evidence presented and the requirements set forth in the agency's Listing of Impairments.

■ Of course, the Secretary must be mindful that " 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.' " *Gold v. Secretary of Health, Educ. and Welfare*, 463 F.2d 38, 41 (2d Cir.1972). Moreover, "a claimant need not be an invalid to be found disabled under Title XVI of the Social Security Act." *Murdaugh v. Secretary of Health and Human Servs.*, 837 F.2d 99, 102 (2d Cir.1988) (citation omitted). The Secretary read the requirements in the Listing of Impairments in a constricted and crabbed manner, forgetting in this case that this remedial statute is to be broadly construed.

### D. *The Williams' Testimony*

Standing alone, the medical evidence strongly suggests, but does not necessarily prove, that claimant is disabled under § 101.03(A). Beyond that, as earlier mentioned, the ALJ failed to make any finding regarding the credibility of Joyce and Loretta Williams' testimony, which was uncontradicted and generally consistent with the medical diagnoses. Nor did the ALJ give a reason for rejecting the testimony that Loretta could not walk as fast or as far as her mother, her brother or her friends. In fact, the ALJ's findings contain no mention of the Williams' testimony.

■ As a fact-finder, an ALJ is free to accept or reject testimony like that given by Joyce and Loretta Williams. A finding that the witness is not credible must never-

theless be set forth with sufficient specificity to permit intelligible plenary review of the record. *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir.1983). The failure to make credibility findings regarding the Williams' critical testimony fatally undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984).

Further, whatever findings the ALJ makes must be consistent with the medical and other evidence. *McLaughlin v. Secretary of Health, Educ. and Welfare*, 612 F.2d 701, 705 (2d Cir.1980). Put another way, an ALJ must assess subjective evidence in light of objective medical facts and diagnoses. Here, the subjective testimony of pain and disability given by claimant and her mother is consistent with the objective medical facts and the experts' opinions. Consequently, we hold that the record in this case lacks adequate evidence to support the Secretary's determination.

## IV CONCLUSION

The Secretary found that Loretta was not disabled under Listing § 101.03(A), which requires that a claimant demonstrate a marked reduction in walking speed or distance to be entitled to disability benefits. The combination of objective medical facts, the medical experts' evaluations of claimant's condition and the failure of the ALJ to set forth reasons for rejecting consistent and uncontradicted lay testimony requires us to reverse this administrative determination because it was not supported by substantial evidence.

Accordingly, we reverse the order of the district court and remand this matter to the Secretary for a calculation of benefits.