**John E. HARRIS, Petitioner,**

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

**No. 27, Docket 91–4044.**

United States Court of Appeals, Second Circuit.

Submitted Aug. 29, 1991.

Decided Nov. 4, 1991.

**124**

John A. Galeziowski, Hamburg, N.Y., filed a brief, for petitioner John E. Harris.

Steven A. Bartholow, Deputy Gen. Counsel, Chicago, Ill. (Edward S. Hintzke, Asst. Gen. Counsel, Arthur A. Arfa, Gen. Atty., Railroad Retirement Bd., Chicago, Ill., of counsel), filed a brief for respondent Railroad Retirement Bd.

Before OAKES, Chief Judge, FEINBERG and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal is from a determination of the Railroad Retirement Board that on January 7, 1991 denied claimant John E. Harris an occupational disability annuity under the Railroad Retirement Act. We have before us an administrative record that seems shrouded in fog like that off a sea-coast in autumn. Both claimant's treating doctor and an expert cardiologist, to whom claimant was referred, found him suffering from coronary artery spasm. This angina condition, according to these physicians, accounts for the patient's symptoms of extreme fatigue and severe exertional limitations. Conflicting with that diagnosis are the consultative medical reports obtained by the hearing officer that attribute these symptoms to a stomach disorder, which has since been remedied. In addition, the diagnostic tests for atherosclerosis were negative. The record does not contain a satisfactory explanation adequate to support the conclusion regarding claimant's medical condition. Therefore, we remand this case to the Railroad Retirement Board for further proceedings.

## FACTS

We set forth briefly the facts as they appear in the record. John E. Harris began working for Conrail in Olean, N.Y. in March 1960 when he was 22–years old. He worked first as a clerk and two years later became a yardmaster on an intermittent basis. In 1975 he was given seniority status as a yardmaster, a responsible position with supervision of up to 80 Conrail employees.

On a vocational form Harris indicated that he spent two hours a day walking, two hours standing, and four hours sitting in a typical working day, bending sometimes and reaching often. At the hearing, Harris testified that heavy lifting was commonly

involved at the small railyard in Olean because he was expected to pitch in and help other employees, throwing switches, clambering up and inspecting locomotive engines, and closing railroad car doors. As he was in charge, he did what he thought necessary to get his job done—"what they paid me for." He also had to lift 30–40 pound boxes every other day as part of the ordinary office routine, and had to feed IBM cards weighing 15 pounds per box into a machine. He said he handled just about anything that came up in the office or in the yard. Harris worked for Conrail for 27 years until April 1987 when he took a voluntary furlough because his employer shut down the Olean railyard. He allegedly became disabled from working as of July 1988 due to a coronary vascular spasm and stomach problems.

Petitioner filed an application for occupational disability under the Railroad Retirement Act, 45 U.S.C. § 231a(a)(1)(iv), on July 13, 1988. The Bureau of Retirement claims denied the application on January 6, 1989, and upheld that determination upon reconsideration on June 2, 1989. Harris then requested a hearing that was held in January 1990.

Testifying before the hearing officer were petitioner, his wife Glenna Harris, and a vocational expert. The medical and hospital reports were all submitted in written form. Harris' treating physician, Dr. Ralph J. Argen, had been his regular doctor for 17 years at the time of the hearing. Dr. Argen had referred petitioner to Dr. Anthony J. Bonner, a cardiologist, who found him suffering from coronary artery spasm. Dr. Argen treated Harris for unstable angina with nitroglycerin and cardizem. Although the medication alleviated the chest pains of the 51–year old claimant, from December 1985 he continued to suffer from extreme fatigue. A Retirement Board medical consultant, Dr. Harry L. Lochte, found petitioner basically normal, with no relationship of pain to exertion except when he shoveled snow in cold weather. A cardiac catherization in February 1987 showed no significant coronary artery disease, and a stress test administered to him in June 1988 was normal.

The hearing officer denied Harris' claim without discussing the credibility of either petitioner's or his wife's testimony. Dr. Argen's several assessments of his long-time patient were discounted and found not credible because the hearing officer found them inconsistent with respect to Harris' exertional capacity and in conflict with the preponderance of the medical evidence in the record before him. The hearing officer concluded therefore that petitioner was not impaired from performing medium-level exertional work—the level of work he performed as yardmaster. Harris could, according to the hearing officer, continue to perform his regular railroad yardmaster occupation. A decision denying petitioner's claim was handed down by the hearing officer in March 1990. An appeal to the Railroad Retirement Board resulted, upon its adoption of the hearing officer's decision, in the denial of Harris' claim by that body in a 2 to 1 vote. From the Board's decision, petitioner appeals.

### DISCUSSION

#### A.

We set forth briefly the pertinent provisions of the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231–231v (1988) (Act), specifically § 231a(a)(1)(iv) that defines the individuals entitled to annuities as: "individuals who have a current connection with the railroad industry, whose permanent physical or mental condition is such as to be disabling for work in their regular occupation, and who (A) have completed twenty years of service...." The Railroad Retirement Board promulgated regulations, pursuant to § 231f(b)(5), of which 20 CFR 208.-11(a) and 208.10 are pertinent to this case.[1] The former provides:

---

1. Former section 208.11, which was in effect when the Board rendered its decision, is now found at 20 CFR § 220.10. The new section contains substantially the same definition. Former section 208.10 is now section 220.12. It contains for purposes of this appeal the same definition of impairment.

An individual shall be deemed to be permanently disabled for work in his regular occupation, whether or not he has been disqualified for such work by his employer, if he has a permanent physical or mental condition, as that term is defined in § 208.10, and he is, in accordance with the occupational disability standards established by the Board, because of such condition physically or mentally unable to perform the duties of such occupation. The cause of the disabling physical or mental condition is immaterial.

20 CFR 208.11(a). And the latter regulation defines "permanent physical or mental condition" to mean "a physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last for a continuous period of not less than 12 months." 20 CFR 208.10(a).

■ We recognize, as the parties state, that the present claim is not for a total and permanent disability, but rather for an occupational disability annuity under the Act. Because the Social Security Act, 42 U.S.C. § 401 *et seq.*, contains a similar definition of disability, *see* 42 U.S.C. § 423(d)(1)(A), it is customary to apply disability benefits case law under the Social Security Act to cases arising from the Railroad Retirement Act. *See, e.g., Poole v. Railroad Retirement Board,* 905 F.2d 654, 661 (2d Cir. 1990); *Aspros v. Railroad Retirement Board,* 904 F.2d 384 (7th Cir.1990); *Romaker v. Railroad Retirement Board,* 733 F.2d 639 (8th Cir.1984).

■ In this Circuit we apply the treating physician rule to disability benefits cases under the Social Security law. With regard to the nature or degree of a claimant's impairment, that rule provides that the treating physician's diagnosis and opinion is binding on the factfinder unless contradicted by substantial evidence and, even if so contradicted, the treating physician's opinion is entitled to some extra weight. *See Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988). The medical opinion of a nontreating physician, as a corollary, may not standing alone constitute the contradicting substantial evidence necessary to displace the view of the treating doctor. *See Hidal-*

*go v. Bowen,* 822 F.2d 294, 297 (2d Cir. 1987).

■ Judicial review in this area of the law is necessary to ensure that a just result obtains between the claimant and the administrative body, here the Railroad Retirement Board, charged by law with reviewing claims of disability. *See Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988). The rationale for our adherence to the primacy of the treating physician's diagnosis is that it assures fairness to claimants by giving due weight to the expert who best knows their medical condition. *See Poole,* 905 F.2d at 661. Although our case law has not made the treating physician rule applicable to claims for an occupational disability annuity—as it has for total and permanent digability annuity, *see id.*—there is no principled reason why the rule should not be fully applicable to occupational disability annuity cases, as the Board commendably concedes.

Having established that claims to the Railroad Retirement Board are decided as are Social Security disability appeals and that implicit in our review is the application of the treating physician rule, we turn to the record in the case before us.

## B.

■ When evaluating a claim seeking an occupational disability annuity the hearing officer must look at the (1) objective medical facts and clinical findings, (2) treating physician's diagnoses and other medical opinions based on the medical facts, (3) subjective evidence of disability and pain related by claimant, and corroborating or contravening evidence of these conditions, if any, and (4) the claimant's educational background, age, and work record. *See Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983); *Gibson v. Heckler,* 779 F.2d 619, 622 (11th Cir.1986).

Our task is to examine these four areas of evidence to decide if the Board's decision is supported by substantial evidence. If it is, the Board's findings are conclusive; if, on the other hand, there has been a failure to apply the correct legal standards or to

provide a reviewing court with a sufficient basis upon which to determine that substantial evidence exists in the administrative record, the Board's findings are not binding. *See Gibson,* 779 F.2d at 622; *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981).

### C.

The objective medical facts, as we noted at the outset, provide a puzzling picture. The cardiac catherization showed no atherosclerotic coronary artery disease. Harris' stress test was normal. At the same time Dr. Bonner, a cardiologist, concluded that claimant was suffering from coronary artery spasm. Cardizem—a medicine used in the treatment of angina due to coronary artery spasm—and nitroglycerin give the patient immediate relief, making it very likely that Harris has an angina condition due to coronary artery spasm, according to the cardiologist. Dr. Argen, the treating physician, who has been petitioner's doctor for 17 years, diagnosed Harris as having "unstable angina."

The treating physician's view was discounted and found not credible for what the hearing officer perceived as the doctor's inconsistent assessments of claimant's ability to perform work-related activities. That finding resulted from the following: on August 25, 1989 in response to questions with respect to claimant's exertional limitations, Dr. Argen indicated on the medical form provided him by the Board that standing, walking, and sitting were not affected by Harris' impairment. On November 14, 1989 Dr. Argen indicated on another medical form that claimant could only sit for two hours, stand for one hour, and not walk at all during an eight-hour workday. The responses on the two reports with respect to the patient's ability to lift, carry, bend, climb, balance, stoop, crouch, kneel, crawl and reach are consistent with one another. We think the noted inconsistency on the two Board forms is not so substantial as to constitute sufficient grounds for totally discounting the treating physician's diagnosis of Harris' condition and the remainder of Dr. Argen's

conclusions regarding claimant's exertional limitations. Perhaps the earlier report was hastily read or hastily filled out by a physician occupied with the myriad of paperwork with which physicians nowadays have to deal.

The evidence of fatigue, pain and a narrowly circumscribed life to which Harris testified, and that his wife corroborated, stands unrefuted in the record. The hearing officer neither credited nor discredited this proof, and neglected to include any findings regarding its credibility. Were this testimony and the treating physician's diagnosis credited, claimant's occupational disability claim would have been established. Further, Harris is presently 54–years old, having completed high school and several years of college. Conrail has been his only employer. He spent 27 years working with the railroad, rising to the position of yardmaster with responsibility over 80 employees. This solid educational and work background lends additional weight to claimant's testimony.

After reviewing the four evidentiary areas it is apparent that some of the medical facts and clinical records militate against allowing the instant claim. But the treating physician rule was not properly applied; the factfinder plainly did not regard Dr. Argen's medical diagnosis, supported by the cardiologist, as binding absent substantial evidence to the contrary. This alone requires a remand to the Board. *See Arzuaga v. Bowen,* 833 F.2d 424, 426 (2d Cir.1987). Nor were credibility findings made by the hearing officer respecting the testimony of John and Glenna Harris. The lack of such findings undercuts the Board's conclusion that there is substantial evidence sufficient to believe Harris is not impaired from performing medium-level exertional work.

Upon remand, the hearing officer should discuss the testimony regarding pain and exertional limitations and make explicit findings of credibility. *See Ricketts v. Secretary of Health & Human Services,* 902 F.2d 661, 664 (8th Cir.1990); *Williams ex rel. Williams,* 859 F.2d at 260–61. More critical, proceeding from a

rejection of the treating physician's views on exertional limitations and the silent rejection of John and Glenna Harris' testimony on the same topic, is the hearing officer's failure to state with sufficient specificity what record evidence conflicts with the exertional limitations found by Dr. Argen. *See White v. Secretary of Health & Human Services,* 910 F.2d 64, 65 (2d Cir. 1990). Although this medical record is perplexing, it is unlike the situation we faced in *Gallagher v. Schweiker,* 697 F.2d 82 (2d Cir.1983), where complainant was suffering from pain but modern medical diagnostic techniques could not explain why. There we concluded that benefits were available only where an impairment has been shown to have a medically ascertainable source. *Id.* at 84–85.

## CONCLUSION

In sum, upon remand, the hearing officer must give proper effect to the treating physician's diagnosis, make credibility findings as to the testimony before him regarding claimant's pain and exertional limitations, and identify the proof that conflicts with the treating physician's finding of exertional limitations. Further, an effort should be made to explain in the record the inconsistencies in Dr. Argen's exertional reports and to obtain, if necessary, further medical evidence to rationalize the differing medical diagnoses of petitioner's condition.

The matter accordingly is remanded to the Railroad Retirement Board for further proceedings consistent with this opinion.