**Maura M. WENK, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 02–CV–5408 (ADS)(ARL).**

United States District Court, E.D. New York.

Nov. 6, 2004.

Binder and Binder, by Charles E. Binder, Esq., of Counsel, New York, NY, for Plaintiff.

Roslyn R. Mauskopf, United States Attorney, Eastern District of New York, by Kelly Coleen Horan, Assistant United States Attorney, Brooklyn, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case requires the Court to travel back in time to determine whether the Plaintiff was disabled under the Social Security Act as of December 31, 1977. This task is especially difficult given the fact that the medical records of the Plaintiff's then-treating physicians no longer exist.

Maura Wenk ("Wenk" or the "Plaintiff") commenced this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final determination of the Commissioner of Social Security ("Commissioner") denying her disability benefits. Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ("Fed. R. Civ.P.").

## I. BACKGROUND

### A. Procedural History

On February 15, 1999, Wenk filed an application for social security disability insurance benefits, alleging an inability to work since May 2, 1976. Wenk last met her insured status on December 31, 1977. After her application was denied initially and on reconsideration, she requested a hearing before an administrative law judge. On February 9, 2000 a hearing was held before Administrative Law Judge Jerry J. Bassett ("ALJ"). At the hearing, the Plaintiff was represented by an attorney.

In a decision dated February 22, 2000, the ALJ found that Wenk was "not disabled." On March 15, 2000, Wenk submitted additional evidence and on March 27, 2000, she requested review of the decision by the Appeals Council. On July 20, 2000, counsel for the Plaintiff submitted comments in support of Wenk's appeal. On August 12, 2002, the Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final administrative determination. This appeal followed.

### 1. Wenk's Testimony at the Hearing

The date last insured was December 31, 1977 and the alleged onset date of her disability was May 2, 1976. The Plaintiff was born on January 4, 1953, stands approximately 5'5" and weighs 148 pounds, approximately 20 pounds heavier than her normal weight. The Plaintiff is divorced and has three children. With regards to her education, the Plaintiff graduated from high school and completed two years of junior college.

The Plaintiff testified that from 1972–1973, she worked as a music coordinator for a radio station. From 1973 until May 1976, she worked for the sales division of CBS. In that position, the Plaintiff testified that in an eight hour day she would sit for two to three hours per day and stand for approximately four hours per day. The Plaintiff did not do any significant lifting at that job. In May 1976, when she was about two and one half months pregnant, the Plaintiff left CBS because "the baby was on [her] sciatica nerve," she had previous back problems, and she had phlebitis in her leg. The Plaintiff testified that she was unable to return to work nor could she travel to work. She also testified that she had to rest often because her back would hurt and her feet would swell. The Plaintiff also suffered from sciatica. When she had her baby in November 1976 the problems did not go away. The Plaintiff did not return to work because "she had constant back pain and leg pain ... just climbing up the stairs was very difficult on [her] back and [getting to work] also made her leg swell." The Plaintiff had another child in February 1978. That pregnancy also caused sciatica, phlebitis and back problems. The Plaintiff testified that her back pain and phlebitis was a continuous problem from the time it began in 1976 until the time she had surgery in 1982. She testified that she saw Dr. Sherwood Greiner and Dr. J. Grant Harrison "quite often." The Plaintiff has not worked since leaving her position at CBS.

Wenk also testified that she had three surgeries on her wrist but does not know

the exact dates of these surgeries. The Plaintiff testified that she injured her wrist while playing golf. In addition, she had back surgeries in 1982, 1989 and 1994. The Plaintiff also suffers from chronic asthma.

The Plaintiff completed a "Disability Report" in which she indicated that she cannot sit, stand, walk, [or] bend for any length of time." In this Report, the Plaintiff also stated that at her job at CBS, she walked for 6 hours, stood for 6 hours, sat for 2 hours, kneeled for 4 hours and that the heaviest weight she lifted was 20 pounds. In this report, she also indicated that she saw Dr. Granier for her back problems and thrombophlebitis of the left leg and her last visit with him was in 1979. She also stated that she was admitted to the Winthrop University Hospital in the "late 1970's" for three weeks for severe back problems. She also saw Dr. J. Grant Harrison in the mid-1970's for acute thrombophlebitis of the left leg. The Plaintiff stated that she "cannot sit, stand, walk, bend for any length of time ... [and that she has] severe chronic pain."

2. **Evidence Relating to the Period Prior to the Plaintiff's Date Last Insured—December 31, 1977**

A claim under Title II of the Act for disability benefits require the claimant to demonstrate that she was disabled at the time she last met the Title's special insured status requirement. 42 U.S.C. § 423. It is undisputed that the Plaintiff last met this requirement on December 31, 1977. Thus, the ALJ must find that the Plaintiff was disabled on or before that date in order for her to qualify for disability benefits. *Ogbunugafor v. Barnhart,* 2002 WL 31886260, at * 4 (S.D.N.Y. December 27, 2002). The Court has reviewed the records which contain medical documentation from 1977 through 1999. How-

ever, the Court will only summarize the medical data from the period prior to the expiration of the Plaintiff's insured status.

From July 17, 1977–July 26, 1977, the Plaintiff was hospitalized at Nassau Hospital in Mineola, New York for complaints of back pain. She was diagnosed with low back pain with right sciatic radiculitis. The Plaintiff stated that she believed that the pain may have been aggravated because she frequently carried her child. On July 17, 1977, the Plaintiff performed straight leg raising to forty-five degrees. Dr. Harrison found mild bilateral leg edema which was more pronounced on the left. His diagnosis included acute back pain, pregnancy, asthma and chronic left thrombophlebitis.

In a case summary dated August 22, 1977, Dr. H. David indicated that the Plaintiff was admitted with the history of low back pain since May 1977. The Plaintiff stated that she had low back pain and a difficult labor in November 1976. A physical examination revealed no significant abnormalities other than her low back. Straight leg raising was positive to forty five degrees with low back pain. The neurological exam was within normal limits and there was no muscle weakness or atrophy in her lower extremities. Dr. David's final diagnosis was "low back pain with right sciatic radiculitis."

The Plaintiff also produced a one-page letter dated September 16, 1998 from Dr. J. Grant Harrison, who indicated that he was retired. In the letter, Dr. Harrison stated that he had not seen the Plaintiff professionally since the mid–1970's and that his treatment records were no longer available. He indicated that he treated the Plaintiff in 1974 for acute thrombophlebitis in her left leg and that she had a recurrence during her first pregnancy. As a result, according to Dr. Harrison, the Plaintiff was unable to commute and per-

form her duties at CBS and she "retired as disabled" in May 1976. Dr. Harrison also noted that her two subsequent pregnancies were complicated by phlebitis and severe back problems.

In a letter dated September 28, 1998, Dr. Sherwood Greiner, an orthopedist, stated that he was semi-retired and that his records relating to the Plaintiff had been discarded. Dr. Greiner indicated that the Plaintiff had not been examined professionally since 1979, but that he recalled that the Plaintiff was the daughter of a personal friend and that he treated her for disc disease in her lumbar spine, complicated by recurring thrombophlebitis of her leg. He also concluded that she "became disabled in April 1976, unable to perform her duties at CBS television."

## B. The ALJ's Decision

As stated above, on February 9, 2000, the ALJ held a hearing in connection with the Plaintiff's claim for disability insurance benefits. By decision dated February 22, 2000, the ALJ concluded that, based upon the evidence at the hearing, the Plaintiff was not entitled to disability insurance benefits because she was not disabled on or before December 31, 1977. In his decision, the ALJ made the following findings:

1. The [Plaintiff] . . . met the disability insured status requirement of the Act on May 2, 1976, the date the claimant alleged she became unable to work, and continued to meet these requirements through December 31, 1977;

2. The [Plaintiff] has not engaged in substantial gainful activity since May 2, 1976;

3. The medical evidence establishes that the [Plaintiff] had recurrent thrombophlebitis and back pain prior to the expiration of her insured status, but she did not have an impairment or combination of impairments listed in, or medially equal to one listed in Appendix 1, Subpart P, Part 404 of the Regulations;

4. The [Plaintiff's] assertion that all work was foreclosed for her due to her impairments prior to the expiration of her insured status is not supported by the medical record and was not credible;

5. The [Plaintiff] had the residual functional capacity to perform at least sedentary work prior to the expiration of her insured status on December 31, 1977;

6. The [Plaintiff] was unable to perform her past relevant, light work as a sales coordinator or secretary and music coordinator;

7. The claimant was almost 25 years of age at the expiration of her insured status, which is defined as a "younger" individual (20 CFR 404.1563);

8. The claimant has a high school education and two years of college (20 CFR 404.1564);

9. The claimant had semiskilled to skilled work experience, which may not have afforded her skills that were transferable to other work (20 CFR 404.1568);

10. Based on a capacity for sedentary work and the claimant's age, education and work experience, Rules 201.28 and 201.29 in Table No. 1, Appendix 2, Subpart P, Part 404 of the Regulations, indicate that a finding of not disabled is appropriate within the meaning of the Social Security Act;

11. The claimant was not under a "disability" as defined in the Social Security Act, at any time on or before the expiration of her insured status

on December 31, 1977 (20 CFR 404.1520(f)).

### C. Evidence Submitted to the Appeals Council

On August 12, 2002, the Appeals Council issued an order stating that it received a letter dated March 4, 2002 written by Dr. Thomas M. Mauri and it was made part of the record. In this letter, Dr. Mauri indicated that he first treated Wenk in December 1988 for neck pain and she subsequently visited him for lower back and leg pain. Dr. Mauri indicated that the history of the Plaintiff's back problems began in the 1970's and that he reviewed the above mentioned operative reports from Nassau Hospital. Dr. Mauri opined that "it is clear : . . . that [Wenk] has had ongoing problems in her back and right leg since 1976 at least. I therefore, refer to this as a problem that has been with her since her early twenties . . . She is absolutely totally disabled from this condition and has been disabled from the original symptoms diagnosed in 1976."

In an order dated August 12, 2002, the Appeals Council stated that they received Dr. Mauri's letter but concluded that it did not provide a basis for changing the ALJ's decision.

## II. DISCUSSION

### A. The Legal Standard

To review the Commissioner's decision, the Court must determine whether (1) the Commissioner applied the correct legal standard, *see Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999); and (2) the decision is supported by substantial evidence, *see* 42 U.S.C. § 405(g); *Brown v. Apfel*, 174 F.3d 59, 61–62 (2d Cir.1999). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and

requires enough evidence that a reasonable person "might accept as adequate to support a conclusion." *Brown*, 174 F.3d at 62–63.

 In determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting interferences can be drawn." *Id.* at 62 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam)). In addition, the Court is mindful that "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998). Indeed, in evaluating the evidence, " 'the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon *de novo* review.' " *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

 Remand of a disability claim for further administrative procedures is an appropriate remedy where, among other matters, (1) "there are gaps in the administrative record or the ALJ has applied an improper legal standard . . .," *Rosa v. Callahan*, 168 F.3d 72, 82–83, or (2) new, material evidence is adduced that was not produced before the agency. *See Raitport v. Callahan*, 183 F.3d 101, 104 (2d Cir. 1999) (citation omitted).

### B. The Availability of Benefits

Federal disability insurance benefits are available to those individuals who are "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). To be eligible for disability benefits under the Act, the Plaintiff must establish her "inability to engage in any substantial gainful activity by rea-

son of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ The Commissioner has promulgated a five-step analysis for evaluating disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has explained:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the Regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is

other work which the claimant could perform.

*DeChirico v. Callahan,* 134 F.3d 1177, 1179–80 (2d Cir.1998) (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982)); *see also Balsamo v. Chater,* 142 F.3d 75, 79–80 (2d Cir.1998); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998). The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step. *See Schaal,* 134 F.3d at 501 (citing *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996); 20 C.F.R. §§ 404.1520, 416.920).

■ Proceeding through the five-step analysis, the Commissioner must consider the complete record, including any objective medical evidence, as well as the claimant's subjective statements concerning her or his impairments, restrictions, daily activities and any other relevant statements. *See Bluvband v. Heckler,* 730 F.2d 886, 891 (2d Cir.1984). However, and significantly, the Commissioner must accord special evidentiary weight to the opinion of the treating physician. *See Clark v. Commissioner of Soc. Sec.,* 143 F.3d 115, 119 (2d Cir. 1998). The "treating physician rule," as it is known, "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by the medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000); *see Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999); *Clark,* 143 F.3d at 119; *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993). The rule, as set forth in the regulations, provides:

> Generally, we give more weight to opinions by your treating sources.... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79; *see Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998). If the opinion of the treating physician as to the nature and severity of the impairment is not given controlling weight, the Commissioner applies various factors to decide how much weight to give the opinion. *See Shaw*, 221 F.3d at 134; *Clark*, 143 F.3d at 118. Those factors include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Clark*, 143 F.3d at 118. When the Commissioner chooses not to give the treating physician's opinion controlling weight, she or he must "give good reasons in [its] notice of determination or decision for the weight [it] gives [claimant's] treating source's opinion." *Clark*, 143 F.3d at 118 (quoting 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2)).

**C. The ALJ Adhered to the Sequential Evaluation**

In this case, the ALJ adhered to the regulatory five-step sequential evaluation. First, the ALJ found that the Plaintiff met the special insured status requirements of the Act until December 31, 1977 and that the Plaintiff had not engaged in substantial gainful activity since May 2, 1976. Second, the ALJ found that the medical evidence established that on or prior to December 31, 1977, the Plaintiff had recurrent thrombophlebitis and back pain. Third, the ALJ found that the Plaintiff's impairment did not meet or equal in severity the clinical criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. Next, the ALJ concluded that the Plaintiff was unable to perform her past relevant, light work as a sales coordinator or secretary and music coordinator. Fifth and finally, the ALJ evaluated the Plaintiff's residual functional capacity and found that on or prior to December 31, 1977, she remained capable of performing work that involved sitting up to six hours, standing/walking up to two hours in an eight-hour workday and lifting/carrying up to ten pounds occasionally. As such, the ALJ concluded that on or prior to December 31, 1977, the Plaintiff was capable of performing sedentary work and as such, she was not-disabled under the Act. Accordingly, the Court finds that the ALJ applied the correct legal standard.

**D. The ALJ's Finding is Not Supported by Substantial Evidence**

The Plaintiff contends that the ALJ's fifth determination that she retained the residual functional capacity to perform sedentary work is not supported by substantial evidence. The Court agrees.

As stated above, the ALJ found that the Plaintiff "was unable to perform her past relevant, light work· as a sales coordinator or secretary and music coordinator." When, as here, a plaintiff demonstrates that her impairment renders her unable to perform past work, the Commissioner has "the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (citations omitted); *see also Garcia v. Apfel*, No. 98 Civ. 1370 RLC, 1999 WL 1059968, at * 4 (S.D.N.Y. Nov. 19, 1999). In that regard, the Commissioner must offer affirmative evidence

including specific medical evidence of the " 'physical functions the claimant is capable of performing.' " *Garcia*, 1999 WL 1059968, at * 4 (quoting *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir.1984)).

As stated above, the medical opinions of treating opinions are to be given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The " 'treating physician rule' applies to retrospective diagnoses, which relate to some prior time period during which the diagnosing physician may or may not have been a treating source." *Cava v. Barnhart*, No. 03–CV–6621 (DC), 2004 WL 1207900, at * 9 (S.D.N.Y. Jun 1, 2004) (quoting *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir.2003)). Although it is true that a

> treating physician's diagnosis of a patient's condition at a time in the past while the physician was not treating his patient is entitled to less weight than a treating physician's diagnosis of his patient's current condition while under active treatment or observation, where there is no medical testimony to rebut the retrospective opinion of the treating physician, nor is there overwhelmingly compelling non-medical evidence to the contrary ... in the absence of competing medical opinions, then there is not 'substantial evidence' necessary to support the Secretary's determination.

*Campbell v. Barnhart*, 178 F.Supp.2d 123, 134 (D.Conn.2001) (internal citations and quotations omitted).

Here, the Plaintiff submitted a letter dated March 4, 2002 from Dr. Mauri, a treating physician who retroactively diagnosed the Plaintiff as disabled from the "original symptoms diagnosed in 1976." In particular, Dr. Mauri wrote:

> I first saw her on December 27, 1988 for neck pain ... The history of her back problems [began] in the 1970's and as a matter of fact I am in possess f an operative report for this patient from Nassau Hospital, which is the present Winthrop Hospital from a Dr. Greiner, Hellou and David. This is dated August 22, 1977 and refers [to] Maura as a 24 year-old female who had lower back pain without history of stress or trauma. The history dated back to 1976 when she had back pain with childbirth and that she aggravated this by carrying her child around. Activity and stress aggravated the condition at that time. Bed rest helped and the patient was treated as an outpatient but did not respond ... The patient's diagnosis at that time was lower back pain with right sciatic radiculitis and she was referred as an outpatient back to the orthopedist's office for followup.

> It is clear from the above that the patient has had ongoing problems in her back and right leg since 1976 at least.

Letter from Dr. Thomas M. Mauri to Mr. Douglas Kugal dated 3/4/02. This letter has never been evaluated by the ALJ, nor did the Appeals Council offer any basis for rejecting Dr. Mauri's retroactive diagnosis of disability. The Court notes that the Plaintiff's then-treating physicians, Dr. Harrison and Dr. Greiner also submitted letters indicating that the Plaintiff has been disabled as of the spring of 1976. In particular, Dr. Harrison's letter stated that the Plaintiff "was retired as disabled in May 1976." Similarly, Dr. Greiner concluded that the plaintiff "became disabled in April of 1976, unable to perform her duties at CBS television." These letters also indicate that their medical records are unavailable. Given the serious magnitude of the denial of SSI benefits, in the Court's view, it would be unfair to the Plaintiff to

discredit these diagnoses solely on the basis that their medical records are no longer available as a result of the retirement of the physicians and due to no fault of the Plaintiff.

As stated above, the ALJ concluded that on or prior to December 31, 1977, the Plaintiff remained capable of performing work that involved sitting up to six hours, standing/walking up to two hours in an eight-hour workday and lifting/carrying up to ten pounds occasionally. However, the ALJ failed to make detailed and specific findings of fact regarding "exactly what [the claimant] can do, especially with reference to [her] ability to sit and for how long." *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir.1984). On remand, the ALJ is respectfully requested to address the retrospective disability diagnosis by Dr. Mauri as well as the opinions of Drs. Harrison and Greiner that the Plaintiff was totally disabled and consider sending the Plaintiff for a retrospective consultative examination. In addition, the ALJ is requested to set forth the bases for his findings in more detail.

**E. As to the Credibility Determination**

■ The ALJ found that Wenk's "assertion that all work was foreclosed for her due to her impairments prior to the expiration of her insured status is not supported by the medical record and was not credible." However, before rejecting the testimony of any witness, "a finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir.1988) (citation omitted). Here, the ALJ found that the Plaintiff's testimony that she was not able to find employment due to her physical impairments was not credible. In the Court's view, the ALJ failed to support his lack of credibility finding with a suffi-

cient analysis or specificity, this is especially so given the fact that the medical evidence was minimal and all the medical opinions in the record confirmed the total work disability of the Plaintiff. Upon remand, the ALJ shall set forth his finding with particularity on this issue so that the Court may adequately review the record.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Commissioner's cross-motion for judgment on the pleadings is **DENIED;** and it is further

**ORDERED,** that Wenk's motion for judgment on the pleadings is **GRANTED;** and it is further

**ORDERED,** that the final decision of the Commissioner is vacated and this case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further administrative proceedings in accordance with this Order; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**