Micheline CLOUTIER, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 98–CV–6294L.

United States District Court, W.D. New York.

Sept. 23, 1999.

Kenneth R. Hiller, Buffalo, NY, for Micheline Cloutier, plaintiff.

Brian M. McCarthy, AUSA, United States Attorney, Rochester, NY, for Kenneth S. Apfel, Commissioner of Social Security, defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that plaintiff was not disabled under the Social Security Act, and therefore, was not entitled to disability benefits. Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c). For the reasons outlined below, the Court finds that the Commissioner's decision was not supported by substantial evidence and accordingly remands the matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff Micheline B. Cloutier ("Cloutier") applied for Social Security disability benefits on February 17, 1995. (T. 87).[1] The Social Security Administration denied her application initially and upon reconsideration. (T. 91, 118). Plaintiff requested a hearing before an administrative law judge ("ALJ"), and hearings were held in the case on March 12, 1996 and February 10, 1997. (T. 29–86). On March 27, 1997, the ALJ issued a decision in which she found that plaintiff could still perform her past work as a cook and housekeeper and therefore was not entitled to disability benefits. (T. 13–19). The ALJ's decision became the final decision of the Commissioner on May 4, 1998 when the Appeals Council denied plaintiff's request for review. (T. 5–6). Pursuant to section 405(g)

of the Social Security Act, 42 U.S.C. § 405(g), plaintiff commenced this action on July 7, 1998, seeking review by this Court of the Commissioner's final decision.

## FACTUAL BACKGROUND

Cloutier was born on November 27, 1943. (T. 34). Claiming that she has been unable to work since May 10, 1994 due to a back injury and aneurysm, plaintiff seeks disability benefits. (T. 13, 93). Cloutier attended but never completed high school. (T. 37). She formerly worked as a dietary aide, cook, and housekeeper. (T. 38).

The medical records contained in the file delineate a long history of plaintiff's complaints of back, leg and arm pain. She sought treatment for back pain from a variety of practitioners, including orthopaedic surgeons, chiropractors, and at a pain center.

In 1988, plaintiff appears to have suffered a stroke, and in February 1995, plaintiff was hospitalized after a cerebral aneurysm was detected. A craniotomy was performed to repair the aneurysm.

In 1996, plaintiff was referred for a psychological examination. Plaintiff was measured with a verbal IQ of 79, and a full-scale IQ of 76. The attending psychologist diagnosed plaintiff with dysthymic disorder and cognitive disorder.

Cloutier's long-term treating physician, Dr. Arluck, completed a physical capacities evaluation form on August 1, 1996 that indicated that Cloutier could only stand and walk three hours per eight hour work day, and could only lift up to five pounds frequently.[2] (T. 350).

The ALJ denied benefits, noting that "there is a paucity of objective findings to substantiate her alleged pain." (T. 15). She went on to find that Cloutier's com-

---

1. "T. ___" refers to the page of the transcript of the Administrative Record filed by the Commissioner with his Answer.

2. With respect to "light work," the Commissioner's regulations provide, in part: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

plaints of pain were not credible because, *inter alia,* "there is nothing in the way of clinical or laboratory evidence to demonstrate the presence of a medically determinable abnormality which could reasonably be expected to produce the degree of discomfort alleged." She further found that plaintiff had the residual functional capacity to perform light work. (T. 17–18).

With respect to plaintiff's cognitive difficulties, the ALJ stated:

"The ALJ concludes that the relatively low IQ scores ... are undoubtedly because she was born in Quebec and English is not her native language.... [T]he plaintiff was given a diagnosis of dysthymic disorder. However, the mental residual functional capacity evaluation prepared by the consulting psychologist is relatively benign." (T. 16).

In her decision, the ALJ did not reference Dr. Arluck's physical capacities evaluation in any specific way.

## DISCUSSION

### A. *The Standard of Review*

■ The first issue to be determined by this Court is whether the Commissioner applied the correct legal standard. *Tejada v. Apfel,* 167 F.3d 770, 773 (2d. Cir.1999); *see also Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) (holding that the court must first review the ALJ's decision for correct legal principles before applying the substantial evidence standard to uphold a finding of no disability); *see also Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984) ("[f]ailure to apply the correct legal standards is grounds for reversal").

■ The only other issue to be determined by the Court is whether the Commissioner's conclusions are supported by substantial evidence. *See Townley,* 748 F.2d at 112 ("It is not the function of a reviewing court to determine *de novo* whether a claimant is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are bind-

ing"). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

### B. *The Standard for Determining Disability*

A person is "disabled" under the Act and therefore entitled to benefits, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for benefits, the disability must be the result of an anatomical, physiological or psychological abnormality demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). Such a disability will be found to exist only if an individual's impairment is "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ Plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." *Id.; see also, Dumas v. Schweiker,* 712 F.2d 1545, 1551 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

The Second Circuit has described the five-step process through which the Com-

missioner makes a determination as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel,* 167 F.3d at 774.

Here, the ALJ found that plaintiff was not engaged in substantial gainful activity (T. 18), and that her condition constituted a severe impairment. (T. 14). Plaintiff's claim therefore survived the first two steps of the Commissioner's inquiry. The ALJ next determined that Cloutier "does not have an impairment ... listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (T. 18). The ALJ also found that Cloutier failed to prove that she could no longer perform her past relevant work. Instead, the ALJ found that Cloutier retained the functional capacity to perform her past relevant work as a cook or housekeeper. (T. 17–18).

While I conclude that the ALJ adhered to the appropriate analytical framework, I do not find that she applied the correct legal principles. Even if the ALJ had applied those principles correctly, the remaining issue in this case would be whether substantial evidence supported the Commissioner's determination that plaintiff, despite her impairments, had the residual functional capacity to perform the work-related activities of her former job.

### C. *The Parties' Arguments and the Court's Findings*

The Commissioner's motion, under FED. R.CIV.P. 12(c) for judgment on the pleadings, is based primarily on the argument that because plaintiff's alleged impairments did not prevent her from engaging in substantial, gainful activity, the decision that plaintiff is not disabled is supported by substantial evidence and should be affirmed under 42 U.S.C. § 405(g).

In plaintiff's cross-motion, also under FED.R.CIV.P. 12(c), plaintiff argues that the ALJ's determination that plaintiff is not disabled is not supported by substantial evidence, was arbitrary and capricious, and an error of law. Plaintiff further contends that: (1) the opinion of plaintiff's treating physician regarding plaintiff's residual functional capacity is entitled to conclusive weight; (2) the ALJ improperly substituted its medical opinion for that of plaintiff's treating physician; and (3) the ALJ failed to give any basis to support her findings regarding plaintiff's residual functional capacity.

The Commissioner counters that the opinion of a treating physician is only entitled to controlling weight if that opinion is supported by medically accepted tests, and is consistent with other substantial evidence. The Commissioner asserts that the opinion of plaintiff's treating physician fails to satisfy those requirements. The Commissioner also maintains that the ALJ's conclusions regarding plaintiff's residual functional capacity were supported by medical opinions.

### i *The Treating Physician Rule*

■■ Cloutier argues that the ALJ improperly rejected the conclusion of her treating physician, Dr. Sheppard Arluck. Dr. Arluck determined that, because of the combined effects of Cloutier's chronic back and leg pain, she is unable to perform any heavy lifting or carrying. (T. 350). It has long been recognized that a treating source's opinion of disability is entitled to some extra weight in claims for Social Security disability benefits. The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *Rosa v. Callahan,* 168 F.3d 72, 78 (2d.Cir.1999); *see also Clark v. Commissioner,* 143 F.3d 115, 118 (2d Cir.1998) (citing 20 C.F.R. § 404.1527(d)(2)[3]). In analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion," nor can she "set [her] own expertise against that of a physician who submitted an opinion or testified before [her]." *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) *citing McBrayer v. Secretary of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983); *see also Wagner v. Secretary of Health and Human Servs.,* 906 F.2d 856, 862 (2d Cir.1990) ("a circumstantial critique by [a] non-physician[ ], however thorough or responsible, must be overwhelmingly compelling" to justify a denial of benefits).

The recent Second Circuit decision in *Rosa v. Callahan,* 168 F.3d 72, supports plaintiff's general proposition:

The ALJ here improperly "set [her] own expertise against that of" the treating physician. (citation omitted). Indeed, as a "lay person[ ]," the ALJ simply was not in a position to know whether the absence of muscle spasms would in fact preclude the disabling loss of motion described by [the treating physician] in his assessment. (footnote and citation omitted). Accordingly, we find nothing so "overwhelmingly compelling" in the ALJ's critique of [the treating physician's] findings as to permit the Commissioner to "overcome" an otherwise valid medical opinion. (citation omitted).

■ In addition, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record. *See Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir.1998) ("even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte* "); *see also Hartnett v. Apfel,* 21 F.Supp.2d 217, 221 (E.D.N.Y.1998) ("if an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly"). In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or . . . by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty . . . exists even when . . . the claimant is represented by counsel.") (citations omitted).

■ The limited record does not provide me with a clear statement of the treating physician's opinion of Cloutier's

---

**3.** The regulations, which were first promulgated in 1991, state: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). Although these regulations have somewhat diluted the strength of the original rule, the ALJ must still give great deference to a treating physician's finding on disability.

disability. Other than Dr. Arluck's residual functional capacity ("RFC") evaluation (T. 350) which indicates limited ability to stand, walk, lift, etc., there does not appear to be any summary opinion or conclusion of the doctor relative to Cloutier's pain or disability. The various clinic notes that he made at the time he saw her do not appear to relate to the things necessary for a determination of disability by the Commissioner. Dr. Arluck's one page RFC evaluation does not appear to be a sufficient analysis of his diagnosis, and simply relying on that report is not enough. *See Rosa v. Callahan,* 168 F.3d at 81 (finding that where doctor's assessment was only one page long and wholly conclusory that ALJ should have asked doctor to supplement findings with additional information); *Gilliams v. Apfel,* 97–CV–2672, 1999 WL 200698, *5–7 (D.Conn. March 24, 1999).

Moreover, the Second Circuit has refused to uphold an ALJ's decision which rejected a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings. *See Rosa v. Callahan,* 168 F.3d at 81; *see also Carroll v. Secretary,* 705 F.2d 638, 643 (2d Cir.1983) (finding in favor of claimant, where claimant's treating physician reported that the claimant suffered from various impairments preventing him from meeting the demands of a certain type of work, and ALJ disregarded that finding, because three remaining doctors who had examined the claimant reached no such conclusions).

In cases in which the Commissioner determines that a medical source opinion is *not* well-supported, the regulations require the ALJ to accord the physician's statements some extra weight based upon several factors. 20 C.F.R. § 404.1527(d)(2).[4] The factors cited in the regulations include the length of the treatment relationship, the nature and extent of the relationship, the supportability of the source's opinion,

the consistency with other medical evidence in the record, whether the opinion involves the speciality of the physician, and any other factors that might be relevant. *Id.* The ALJ failed to address any of these factors, however.

In this case, the ALJ appears to have ignored treating physician Arluck's opinion in his RFC evaluation that Cloutier was unable to lift or carry over 25 pounds and unable to stand or walk more than three hours each day. (T. 350). The ALJ's decision never acknowledged that opinion, never evaluated whether the opinion was entitled to compelling weight, nor evaluated the factors outlined in the regulations to assign Dr. Arluck's opinion any additional weight. This was clear error that requires remand. *See Downs v. Apfel,* 9 F.Supp.2d 230, 233 (W.D.N.Y.1998). To the extent there were any clinical findings by a treating physician, such as Dr. Arluck, the ALJ should have discussed that physician's opinion.

### ii Credibility Determinations

 The function of the ALJ includes evaluating the credibility of all witnesses, including the claimant. *See Carroll v. Secretary of HHS,* 705 F.2d 638, 642 (2d Cir.1983). Although the ALJ is free to accept or reject the testimony of any witness, a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 260–61 (2d Cir.1988) (citation omitted). The ALJ's findings must be consistent with the other evidence in the case. *See id.* at 261.

Here, the ALJ found that Cloutier's subjective complaints and the resulting functional limitations were not credible. However, the ALJ does not provide a sufficient

---

4. The regulations provide: "When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d)(3) through (5) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 1527(d)(2).

analysis of the evidence to support this credibility finding, and I am troubled by the ALJ's rather cavalier treatment of the plaintiff's pain.

■ In cases where pain or other subjective symptoms are alleged, the determination must contain a thorough discussion and analysis of the objective medical evidence and the other evidence, including the individual's complaints of pain as well as the ALJ's personal observations. However, the ALJ "is not free to accept or reject [an] individual's complaints solely on the basis of [the ALJ's] personal observations...." Social Security Ruling ("SSR") 96–7p, 1996 WL 374186 (S.S.A. July 2, 1996). In addition, SSR 96–7p provides:

> [The ALJ] must consider the entire case record and give specific reasons for the weight given to the individual's statements.... The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96–7P.

■ A review of the ALJ's decision in this case indicates that she rejected Cloutier's subjective complaints because she found them to be not fully credible. (T.

15, 17). Although the ALJ's decision contains a discussion of the medical evidence and a summary of Cloutier's subjective complaints, the decision does not provide a sufficient analysis of the evidence to support the lack of credibility finding. For example, the ALJ does not explain why, contrary to the medical evidence, she found that Cloutier did not appear to be in any distress. This omission is exacerbated by the ALJ's failure to try to resolve any alleged inconsistencies [5], and her failure to set forth a logical explanation of why she found that Cloutier was able to work. The ALJ's reference that Cloutier's "fingernails were polished and nicely manicured" (T. 15) neither appears relevant nor is the kind of compelling evidence necessary to supplant the findings by a physician at Strong Memorial Hospital that plaintiff's back and arm pain was neuropathic in nature. (T. 302). Thus, the ALJ's decision does not satisfy the requirements of SSR 96–7p.

Moreover, the ALJ's credibility finding is not set forth with sufficient specificity to enable the Court to determine whether it is supported by substantial evidence. It is impossible to determine whether the ALJ improperly discredited Cloutier's complaints of debilitating pain on the grounds that they were not supported by objective medical evidence or because they were not supported by her medical history, diagnosis, daily activities, efforts to work and any functional limitations or restrictions caused by the pain. *See* 20 C.F.R. § 404.1529.

### CONCLUSION

For the foregoing reasons, the Commissioner's decision that plaintiff was not disabled is not supported by substantial evidence and is therefore reversed. Defendant's motion for judgment on the pleadings (Dkt.# 4) is denied, and plain-

---

**5.** For example, plaintiff's complaints of back pain appear in conflict with the ALJ's finding that plaintiff was not credible. *See* SSR 96–7p, 1996 WL 374186 at *4–5 (S.S.A. July 2, 1996) (consistency of individual's own state- ments is one strong indication of credibility, especially those complaints that are made to treating or examining medical sources); *see also Rosario v. Apfel*, 97–CV–5759, 1999 WL 294727, *6 (E.D.N.Y. March 19, 1999).

tiff's cross-motion for judgment on the pleadings (Dkt.# 7) is also denied. The case is remanded, pursuant to 42 U.S.C. § 405(g), for further administrative proceedings, consistent with this Decision and Order.

IT IS SO ORDERED.