Gabriel **MENDOZA, aka Gabriel Mendoza Alcala, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security Administration, Defendant.**

No. CV 99–7813–RC.

United States District Court, C.D. California.

March 29, 2000.

Joel D. Leidner, Los Angeles, CA, for Plaintiff.

Dorothy A. Schouten, Asst. U.S. Atty., Los Angeles, CA, for Defendant.

## MEMORANDUM DECISION AND ORDER

CHAPMAN, United States Magistrate Judge.

Plaintiff Gabriel Mendoza filed a complaint on July 29, 1999, seeking review of the Commissioner's decision denying his application for disability benefits. The plaintiff filed a motion for summary judgment on January 5, 2000, and the defendant filed a cross-motion for summary judgment on March 8, 2000. The plaintiff filed a response on March 24, 2000. The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

### I

On March 23, 1993 (protective filing date), the plaintiff filed a claim for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act, 42 U.S.C. § 1382(a), claiming an inability to work since April 28, 1991, due to diabetes mellitus. Certified Administrative Record ("A.R.") 86–89. The plaintiff's application initially was denied on August 3, 1993, and was denied following reconsideration on February 25, 1994. A.R. 121–25, 143–47. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") Philip J. Simon on September 16, 1996. A.R. 39, 150–51. On July 8, 1997, the ALJ issued a decision finding that the plaintiff was disabled from February 1, 1993, through February 20, 1996, but not thereafter. A.R. 11–25. The plaintiff sought review by the

Appeals Council; however, review was denied on June 15, 1999. A.R. 4–6, 9–10.

### II

The plaintiff was born in Mexico on March 24, 1956; he is currently 44 years old. A.R. 47, 86. He has a seventh-grade education and has previously worked as an auto body repairer. A.R. 47–48, 94, 318.

The ALJ determined that the plaintiff was disabled between February 1, 1993, and February 20, 1996. A.R. 20. The ALJ also found that, although the plaintiff cannot return to his past relevant work as an auto body repairer, which was heavy work (as described by plaintiff), he has, as of February 21, 1996, the residual functional capacity to perform light work and, based on the testimony of a vocational expert, can perform a significant numbers of jobs in the national economy. A.R. 20–21.

The plaintiff contends that the ALJ's determinations that he was not disabled as of February 21, 1996, that he has the residual functional capacity to perform light work, and that he can perform a significant numbers of jobs in the national economy are not supported by substantial evidence.

### III

The plaintiff has the following pertinent medical history: The plaintiff was initially diagnosed with diabetes in 1991, and it became insulin-dependent diabetes in 1993. A.R. 43. On July 9, 1993, the plaintiff was examined by Rocely Ella Tamayo, M.D., an internist, who diagnosed diabetes mellitus and malnutrition, and noted that the plaintiff appears "thin, pale and weak, [and is] very poorly nourished[,]" weighing only 81 pounds. A.R. 206–10. Six months later, Dr. Tamayo reexamined the plaintiff and diagnosed insulin-dependent diabetes mellitus with peripheral neuropathy[1] and

---

1. Neuropathy is "a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; the etiology may be known or unknown." *Dor-*

*land's Illustrated Medical Dictionary,* 1132 (28th ed.1994). Peripheral neuropathy, or polyneuropathy, consists of "neuropathy of several peripheral nerves simultaneously." *Id.* at 1132, 1330.

enteropathy,[2] resulting in chronic diarrhea. A.R. 197–99. A.R. 197, 200.

On August 4, 1993, the plaintiff was examined at Los Angeles County–USC Medical Center ("County–USC"), where he complained of weakness, diarrhea, anorexia, night sweats and weight loss of 60 pounds over six months. A.R. 154–94. At the time, the plaintiff had a 30–year history of alcohol abuse. A.R. 157. The plaintiff was diagnosed with, and hospitalized for treatment of, uncontrolled diabetes mellitus, malabsorption secondary to pancreatic insufficiency,[3] malnutrition, hyponatremia[4] and anemia. A.R. 154–94. The plaintiff was treated with insulin, Pancrease[5] and Augmentin;[6] he remained hospitalized until September 1, 1994. *Id.*

After being released from the hospital, the plaintiff continued to receive health care at County–USC, including medication—insulin, Pancrease, Cipro,[7] Elavil, Lomotil, Tagamet, and Tetracycline—and nutritional counseling. A.R. 195–96, 212–80. Sigmoidoscopies performed at County–USC on January 20 and July 20, 1994, showed that the plaintiff has a spastic colon. A.R. 258, 266. A panendoscopy taken at County–USC on October 13, 1994, showed a duodenal bulb and multiple areas of erythema. A.R. 250. In November 1994, the plaintiff was diagnosed with a right foot diabetic ulcer, autonomic neuropathy, blurry vision and impotence. A.R. 232, 235, 237, 240. On April 3, 1996, the plaintiff was treated at County–USC for out-of-control diabetes mellitus, chronic diarrhea secondary to malabsorption and chronic pancreatic insufficiency; however, as of June 25, 1996, the plaintiff's diarrhea had improved. A.R. 300–02, 314, 316.

On February 20, 1996, the plaintiff was examined by Alex Bloom, M.D., a consulting internist, who diagnosed the plaintiff with diabetes mellitus under treatment, probable peripheral neuropathy, and possible enteropathy and/or pancreatic insufficiency and/or malabsorption. A.R. 281–83. Dr. Bloom found that plaintiff weighed 128 pounds, and his diabetes was "under treatment." A.R. 282–83. Based on these findings, Dr. Bloom opined that the plaintiff could occasionally lift and or carry up to 50 pounds, frequently lift and/or carry up to 10 pounds, could sit for about six hours in an eight-hour day and could stand or walk for approximately six hours in an eight-hour day. A.R. 284–86.

Based on a review of plaintiff's medical records, David Brown, M.D., a non-examining and non-treating physician, testified at the administrative hearing that plaintiff has sensory neuropathy from his diabetes, pancreatic insufficiency, and a history of alcohol abuse, gastroesophageal reflux, and significant weight loss. A.R. 42–47, 61–72. Without citing any supporting clinical data, Dr. Brown opined that the plaintiff should have no restrictions on his ability to lift, carry, sit, stand or walk, and no postural or manipulative limitations, and the only restrictions the plaintiff needs are the "standard diabetic protective foot gear" and to avoid using dangerous equipment that may potentially harm his feet. A.R. 61–62.

## DISCUSSION

### IV

█ Pursuant to 42 U.S.C. § 405(g), the Court has the authority to review the

---

2. Enteropathy is "any disease of the intestine." *Id.* at 560.

3. Malabsorption is the "impaired intestinal absorption of nutrients." *Id.* at 980.

4. Hyponatremia is a "deficiency of sodium in the blood." *Id.* at 807.

5. "Pancrease is used to treat pancreatic enzyme deficiency." *The PDR Family Guide to Prescription Drugs,* 423 (5th ed.1997).

6. "Augmentin is used in the treatment of lower respiratory, middle ear, sinus, skin, and urinary tract infections that are caused by certain specific bacteria. These bacteria produce a chemical enzyme called beta lactamase that makes some infections particularly difficult to treat." *Id.* at 49.

7. "Cipro is used to treat infections of the lower respiratory tract, the skin, the bones and joints, and the urinary tract. . . ." *Id.* at 105.

Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999); *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of the Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999); *Meanel,* 172 F.3d at 1113. It is "more than a mere scintilla but less than a preponderance." *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir.1998); *Reddick,* 157 F.3d at 720.

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick,* 157 F.3d at 720; *Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir.1997) (per curiam). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." *Reddick,* 157 F.3d at 720–21; *Sousa v. Callahan,* 143 F.3d 1240, 1243 (9th Cir. 1998).

The claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a *prima facie* case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.920(c). If the claimant has a severe impairment, in the **Third Step**, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. § 416.920(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform his past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.920(e). The claimant has the burden of proving he is unable to perform past relevant work. *Reddick,* 157 F.3d at 721; *Smolen,* 80 F.3d at 1289. When the claimant shows an inability to perform past relevant work, a *prima facie* case of disability is established and, in **Step Five**, the burden shifts to the Commissioner to prove that the claimant, based on his age, education, work experience and residual functional capacity, can perform other substantial gainful work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(f); *Tackett v. Apfel,* 180 F.3d 1094, 1098–99 (9th Cir.1999); *Reddick,* 157 F.3d at 721; *Smolen,* 80 F.3d at 1289. "It is incumbent on the [Commissioner] at a minimum, to come forward

with specific findings showing that the claimant has the physical and mental capacity to perform specified jobs, taking into consideration other requirements of the job as well as the claimant's age, education, and background." *Hall v. Secretary of Health, Educ. and Welfare,* 602 F.2d 1372, 1377 (9th Cir.1979) (citations omitted). In certain instances, the Commissioner is entitled to rely on the Grids to rebut the claimant's prima facie case of disability. 20 C.F.R. § 404, Subpart P, App. 2; *Gonzalez v. Secretary of Health & Human Servs.,* 784 F.2d 1417, 1419 (9th Cir.1986). However, the Commissioner cannot rely on the Grids when the claimant suffers from nonexertional limitations; rather, the Commissioner must present a vocational expert's testimony. *Perminter v. Heckler,* 765 F.2d 870, 872 (9th Cir. 1985); Social Security Ruling 83–12, 1983 WL 31253, *1.

Applying the five-step sequential evaluation process, the ALJ found that the plaintiff has not engaged in any substantial gainful activity since March 23, 1993. (Step One). The ALJ next found that the plaintiff has severe insulin-dependent diabetes mellitus, pancreatic insufficiency, chronic diarrhea and chronic weight loss (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ then determined that between February 1, 1993, and February 20, 1996, a closed period, the plaintiff was disabled since he could not perform his past relevant work as an auto body repairer or any other substantial gainful activity in the national economy. (Steps Four and Five). A.R. 14, 20. The ALJ went on to find that, although plaintiff still cannot perform his past relevant work as an auto body repairer, his medical condition had improved as of February 21, 1996 (the date following Dr. Bloom's evaluation of plaintiff), and he now has the residual functional capacity to perform "a somewhat restricted range of light work," in that he "requires protective foot wear, and he is mildly restricted in mental functioning . . . ." A.R. 19–20. Finally, based on a vocational expert's testimony, the ALJ determined that plaintiff can perform a significant numbers of jobs in the national economy, including injection mold machine tender, housekeeping cleaner, and small parts assembler II, and thus, is not disabled. A.R. 19, 21.

## V

The ALJ determined that the plaintiff is entitled to a "closed period" of disability between February 1, 1993, and February 20, 1996. "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Pickett v. Bowen,* 833 F.2d 288, 289 n. 1 (11th Cir.1987); *Shepherd v. Apfel,* 184 F.3d 1196, 1199 n. 2 (10th Cir.1999).

The ALJ then determined that:

[T]he medical record shows that there was considerable improvement in the [plaintiff's] medical condition as of February 20, 1996. . . . [T]he major impairments, i.e., chronic diarrhea, diabetes mellitus, chronic weight loss, and pancreatitis, were all described by the [plaintiff's] treating source as either improved, resolved, or under control. Therefore, I find no reasonable medical cause for the [plaintiff's] continued allegations of severely restrictive symptoms and debilitating pain after this date. The record, . . . and the testimony of [Dr. Brown], establishes [sic] that the [plaintiff] experienced medical improvement. The functional capacity assessments provided further show that this medical improvement was related to the ability to work. The [plaintiff] experienced an improvement in medical signs and findings, as evidenced by normalization of his weight and laboratory data. His condition no longer met or equaled a listing, and he went from an inability to work at all to the capacity for at least some work activity.

A.R. 18 (citations omitted); *see also* A.R. 20 ("By February 21, 1996, the [plaintiff]

regained the capacity for a somewhat restricted range of light work.").

"Once a claimant has been found to be disabled, ... a presumption of continuing disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." *Bellamy v. Secretary of Health & Human Serv.*, 755 F.2d 1380, 1381 (9th Cir.1985); *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir.1983); *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir.1983). Nevertheless, a claimant whose condition has improved medically so that he is able to engage in substantial gainful activity may no longer be disabled. 42 U.S.C. § 1382c(a)(4); 20 C.F.R. § 416.994; *Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1459 (9th Cir.1995).

> A medical improvement is:
>
> any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)....

20 C.F.R. § 416.994(b)(1)(i), (2)(i). In assessing whether there is a medical improvement, the Commissioner must first compare the severity of the claimant's current impairments to the severity of the impairments when the claimant most recently was found to be disabled. 20 C.F.R. § 416.994(b)(1)(vii), (b)(2)(i). If there has been no decrease in medical severity, there has been no medical improvement. 20 C.F.R. § 416.994(b)(5)(iii). If medical improvement is shown through objective medical evidence, the Commissioner next must compare the claimant's current residual functional capacity to his

residual functional capacity at the time the claimant most recently was found to be disabled to determine whether the medical improvement is related to the claimant's ability to do work.[8] 20 C.F.R. § 416.994(b)(2)(ii-iii), (b)(5)(iv). If the claimant has experienced medical improvement related to his ability to do work, the Commissioner then must determine whether the claimant's current impairments are severe. 20 C.F.R. § 416.994(b)(5)(vi). If the claimant's current impairments are not severe, the claimant is no longer disabled. *Id.* If the claimant's current impairments are severe, the Commissioner must then determine whether the claimant, based on his current residual functional capacity, can perform his past relevant work. 20 C.F.R. § 416.994(b)(5)(vii). If so, the claimant is no longer disabled. *Id.* If the claimant, based on his current residual functional capacity, cannot perform his past relevant work, then the Commissioner must determine whether the claimant, based on his age, education, work experience and current residual functional capacity, is capable of performing other work. 20 C.F.R. § 416.994(b)(5)(viii). If so, the claimant is no longer disabled; if not, the claimant's disability will continue. *Id.*

█ This medical improvement standard applies to cases, such as here, involving a closed period of disability. *Shepherd*, 184 F.3d at 1200; *Jones v. Shalala*, 10 F.3d 522, 524 (7th Cir.1993); *Pickett*, 833 F.2d at 291–93; *See also Chrupcala v. Heckler*, 829 F.2d 1269, 1274 (3d Cir.1987) ("Fairness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specified period.").

█ At the administrative hearing, plaintiff testified that he continues to experience blurry vision, fatigue, and dizziness when he lifts up his head, numbness in his hands and feet, and a loss of strength in

---

8. If the medical improvement is unrelated to the claimant's ability to do work, the Commissioner must consider whether certain enumerated exceptions apply. 20 C.F.R. § 416.994(b)(3), (b)(4), (b)(5)(v). If no exception applies, the claimant's disability continues. 20 C.F.R. § 416.994(b)(5)(v).

gripping items with his hands. A.R. 50–52, 56, 58. He also testified that he can stand for only half an hour before having to sit and rest, he can sit for only half an hour before having to stand because of back and foot pain, and he can walk for only one block before having to stop and rest due to dizziness and fatigue. A.R. 58–59. Additionally, the plaintiff testified that he has frequent diarrhea, and has to use the bathroom 12 to 14 times a day. A.R. 58. The ALJ disbelieved this testimony, finding:

> [T]he [plaintiff's] recent allegations of severe pain and restriction[s] are called into question based on [his] unsupported claims of blurred vision. . . . The medical expert noted that there [is] no medical report of vision problems and no substantiation of eye surgery to which the [plaintiff] referred. . . . Further diminishing the [plaintiff's] credibility is the use of a Social Security number for the years 1982 through 1991 that differed from his present Social Security number. . . . This issue was addressed at the hearing with little clarification from the [plaintiff]. [¶] In view of the above examples, I conclude that the [plaintiff's] allegation[ ] that he was too physically restricted by his impairments to work after February 20, 1996[is] contradicted by the record, and I conclude that the [plaintiff] can engage is some work activity. . . .

A.R. 18–19.

The ALJ's adverse credibility finding, which was key to his determination that the plaintiff experienced a medical improvement, is not supported by substantial evidence. Contrary to the ALJ's finding, the record shows that before February 21, 1996, plaintiff complained of, and was

treated for, blurred vision, A.R. 221, 234, 237, a common symptom of diabetes mellitus. *Dorland's Illustrated Medical Dictionary*, at 457; *See also* S.S.R. 96–7p, 1996 WL 374186, *1, *5 (S.S.A.) (consistency of individual's own statements is one strong indication of credibility, especially those complaints that are made to treating or examining medical sources). Nothing in the record shows that this symptom no longer exists.

■ Moreover, in Social Security hearings, the ALJ has an independent "special duty to fully and fairly develop the record," and "to assure that the claimant's interests are considered[,]" and this duty exists regardless of whether the claimant is represented by counsel. *Smolen,* 80 F.3d at 1288; *Higbee v. Sullivan,* 975 F.2d 558, 561 (9th Cir.1992) (per curiam); *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir.1983). Yet here, the ALJ improperly disbelieved the plaintiff's "unsubstantiated" testimony regarding recent eye surgery even though he made no effort to obtain those records and had not advised the plaintiff to obtain them. *See* A.R. 83. Similarly, the ALJ improperly found that the plaintiff was not credible because he used a false Social Security number from 1982 through 1991, even though the ALJ never sought clarification from the plaintiff about the two Social Security numbers.[9] *See Cloutier v. Apfel,* 70 F.Supp.2d 271, 278 (W.D.N.Y.1999) (holding ALJ's adverse credibility finding is without support when based, in part, on "ALJ's failure to try to resolve any alleged inconsistencies").

Once a claimant has presented objective evidence that he suffers from impairments, such as diabetes, pancreatic insufficiency and chronic diarrhea, that could cause pain or other nonexertional limitations,[10] and no

---

9. One possible reason for the plaintiff's use of two Social Security numbers is that initially he entered this country illegally before becoming a lawful resident under the 1986 amnesty program. A.R. 48. That plausible explanation does not provide a sufficient reason for the ALJ to reject the plaintiff's limitations testimony. *See Ghant v. Bowen,* 930 F.2d 633, 638 (8th Cir.1991) ("[Claimant's] explanation for using two social security numbers,

to conceal his prison record so he could get a job, is not sufficient reason to disregard the complaints of pain that were substantiated by other evidence in the record.").

10. "While most cases discuss excess pain testimony rather than [other nonexertional limitations] testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms."

evidence affirmatively suggests that he is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Morgan,* 169 F.3d at 599; *Regennitter v. Commissioner of the Social Security Admin.,* 166 F.3d 1294, 1296 (9th Cir.1999); *Bunnell v. Sullivan,* 947 F.2d 341, 347 (9th Cir.1991) (en banc). Here, "the ALJ provided unsatisfactory reasons for discounting [plaintiff's] credibility, and ... his findings were unsupported by substantial evidence based on the record as a whole." *Reddick,* 157 F.3d at 724.

Since the ALJ's finding of medical improvement depends upon his unsupported and improper adverse credibility determination against plaintiff, there is no substantial evidence to support the finding of medical improvement. *See, e.g., Burress v. Apfel,* 141 F.3d 875, 880–81 (8th Cir. 1998) (holding that, in a closed period case, the ALJ improperly discredited claimant's subjective testimony, and thus, finding that claimant experienced medical improvement was not supported by substantial evidence).

## VI

"[W]here the ALJ improperly rejects the claimant's testimony regarding [his] limitations, and the claimant would be disabled if [his] testimony were credited, ... that testimony is ... credited as a matter of law." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995); *Reddick,* 157 F.3d at 729. As the vocational expert testified, when the plaintiff's limitations are credited, it is clear that plaintiff cannot perform a substantial number of jobs in the national economy:

> [ALJ]: [T]aking the [plaintiff's] complaints into consideration in this matter in terms of the limitations of standing, walking, sitting, lifting due to weakness,

fatigue and frequent trips to the bathroom[,] as well as napping during the day[,] in your opinion could he perform any jobs with those restrictions if I found them credible?

> [VE]: No, Your Honor. An individual with those restrictions would not be able to safely and productively participate in competitive employment.

A.R. 78. Thus, based on this testimony by the vocational expert, the Court finds that plaintiff's disability continued beyond February 21, 1996, and no purpose would be served by remanding this matter for further proceedings. *Harman v. Apfel,* 203 F.3d 1151, 1158–59 (9th Cir.2000); *Reddick,* 157 F.3d at 729–30. *Cf. Iida,* 705 F.2d at 365 ("Benefits wrongfully terminated should be reinstated without further agency proceedings.").

## ORDER

The plaintiff's motion for summary judgment IS GRANTED, the defendant's cross-motion for summary judgment IS DENIED, and the Commissioner's decision awarding disability benefits to plaintiff under Title XVI of the Social Security Act for only the closed period of February 1, 1993, through February 20, 1996, is reversed. Title XVI benefits shall be awarded to plaintiff from February 1, 1993, and Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that the Clerk of Court shall serve copies of this Memorandum Decision and Order and Judgment on the parties.

---

*Swenson v. Sullivan,* 876 F.2d 683, 687–88 (9th Cir.1989). Thus, several courts have applied this standard to assess testimony about diabetic symptoms. *See Byrnes v. Shalala,* 60 F.3d 639, 641–42 (9th Cir.1995) ("ALJ made inadequate findings to support his conclusion that [plaintiff's] subjective complaints of un-

controlled diabetic episodes were incredible."); *Embrey v. Bowen,* 849 F.2d 418, 423 (9th Cir.1988) (ALJ failed to provide specific and legitimate reasons for disbelieving plaintiff's testimony regarding subjective symptoms, including complaints of dizziness and blurred vision caused by diabetes).